PC SCAN/CAT.3/PC 4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

RECEIVED JC
9/6/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

24-CV-8117

ROBERT CLARK # N231810

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

JUDGE BLAKEY
MAGISTRATE JUDGE JANTZ

vs.

Case No: _____
(To be supplied by the Clerk of this Court)

ILLINOIS DEPARTMENT OF
CORRECTIONS; WEXFORD HEALTH
SOURCE INC; RANDY PFISTER, PRIOR
WARDEN OF STATEVILLE; CHARLES
TRUITT, WARDEN OF STATEVILLE;
MARLENE HENZE, MEDICAL DIRECTOR;
HELEN BRUCKNER, NURSE PRACTITIONER;
ORR, NURSE PRACTITIONER; LOLA,
NURSE PRACTITIONER; WENDY,
REGISTERED NURSE; TINA REGISTERED
NURSE;

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

✓      **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983 U.S. Code** (state, county, or municipal defendants)

_____      **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE 28 SECTION 1331 U.S. Code** (federal defendants)

_____      **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

### I.    Plaintiff(s):

A.    Name: ROBERT CLARK

B.    List all aliases: ROBERT ST.JES, ROBERT STEPHEN, ROBERT COLE

C.    Prisoner identification number: N23186

D.    Place of present confinement: STATEVILLE CORRECTIONAL CENTER

E.    Address: P.O.BOX 112, JOLIET, ILLINOIS 60434

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

### II.   Defendant(s):
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.    Defendant: RANDY PFISTER FORMER WARDEN

       Title: WARDEN

       Place of Employment: STATEVILLE CORRECTIONAL CENTER

B.    Defendant: CHARLES TRUITT

       Title: WARDEN

       Place of Employment: STATEVILLE CORRECTIONAL CENTER

C.    Defendant: MARLENE KAYE HENZE

       Title: MEDICAL DIRECTOR

       Place of Employment: STATEVILLE CORRECTIONAL CENTER

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                          Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**II.  Defendant(s) Continues:**

    D.  Defendant:   Helen A. Bruckner

        Title:   Nurse Practitioner

        Place of Employment:   Stateville Correctional Center

    E.  Defendant: Orr

        Title:   Nurse Practitioner

        Place of Employment:   Stateville Correctional Center

    F.  Defendant:   Lola

        Title:   Nurse Practitioner

        Place of Employment:   Stateville Correctional Center

    G.  Defendant: Tina

        Title:   Registered Nurse

        Place of Employment:   Stateville Correctional Center

    H.  Defendant:   Lora

        Title:   Registered Nurse

        Place of Employment:   Stateville Correctional Center

    I.  Defendant:   Wendy

        Title:   Registered Nurse

        Place of Employment:   Stateville Correctional Center

    J.  Defendant:   Buatista

        Title:   Physician

        Place of Employment:   Stateville Correctional Center

    K.  Defendant:   Mark Chwajol

Title:___Neurologist_____

Place of Employment:___UIC Medical Center_____

L. Defendant:___John Does One thru Five identity unknown_____

   Title:___Registered Nurses_____

   Place of Employment:___Stateville Correctional Center_____

M.   Defendant:___Debbie Knauer:_____

   Title:___Member of the Administrative Review Board____

   Place of Employment:___Springfield Illinois_____

**III. List All lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

   A.   Name of case and docket number:___Robert Clark v. Director 1:08-cv-158____

   B.   Approximately date of filing lawsuit:___January 8, 2008_____

   C.   List all plaintiffs, including any aliases:___Robert Clark, Robert Stephen,____
        Jessie Stines, Robert Cole, Robert Stevens_____

   D.   List all Defendants:____I do not remember the defendants' names._____
        _____

   E.   Court in which the lawsuit was filed:___Northern District_____

   F.   Name of judge to whom case was assigned:___Der-Yeghiayan, district Judge.____
        Ashman Magistrate Judge_____

   G.   Basic claim made:___Prison Conditions_____

   H. Disposition of the case:___Dismissed for failure to serve Summons._____

   I.   Approximate date of disposition:___N/A_____

**III. List All lawsuits Continues:**

   A.   Name of case and docket number:___Robert Clark v. Edwin Burnette_____

   B.   Approximately date of filing lawsuit:___October 20, 2008_____

   C.   List all plaintiffs, including any aliases:___Robert Clark, Robert Stephens,_____
        Jessie Stine's, Robert Coles, Robert Stevens_____

D. List all Defendants:   The Public Defenders Office and The States Attorneys Office

E. Court in which the lawsuit was filed:   Northern District of Illinois

F. Name of judge to whom case was assigned:   Lefkow, Judge, Brown, Magistrate Judge

G. Basic claim made:   Civil Rights claim.

H. Disposition of the case:   Dismissed for failure to state actionable claim. under Civil Rights

I. Approximate date of disposition:   N/A

**III.   List All lawsuits Continues:**

A. Name of the case and docket number:   Robert Clark v. Donald N. Snyder, Jr. et al. 1:01-cv-07877

B. Approximate date of filing lawsuit:   October 11, 2001

C. List all plaintiffs, including any aliases:   Robert Clark, Robert Stephens, Jessie Stines, Robert Coles, Robert Stevens

D. List all defendants: Donald Snyder, Jr., Rosemary Sullivan, Shift Commander Treating Physician, Arresting Officer, and Counselor

E. Court in which the lawsuit was filed:   Northern District of Illinois

F. Name of judge to whom case was assigned:   Hon. Nan R. Nolan

G. Basic claim made:   Deliberate Indifferent

H. Disposition of the case:   Settlement

I. Approximate date of disposition:   November 27, 2005

**III.   List All lawsuits Continues:**

A. Name of the case and docket number:   Robert Clark v. Randy Pfister

B. Approximate date of filing lawsuit:   November 21, 2016

C. List all plaintiffs, including any aliases:   Robert Clark, Robert Stephens, Jessie Stine's, Robert Coles, Robert Stevens

D. List all defendants:___Randy Pfister_____

E. Court in which the lawsuit was filed:___Northern District of Illinois_____

F. Name of judge to whom case was assigned:___Coleman, Judge, Schekier,_____
   Magistrate Judge_____

G. Basic claim made:___Habeas_____

H. Disposition of the case:___N/A_____

I. Approximate date of disposition:___November 25, 2015_____

**III> List All Lawsuits Continues:**

A. Name of the case and docket number:___Small Claims Court 13CC2254_____

B. Approximate date of filing lawsuit:___January 14, 2013_____

C. List all plaintiffs, including any aliases:___Robert Clark, Robert Stephens,_____
   Robert Coles, Robert, Jessie Stines_____

D. List all defendants:___Warden_____

E. Court in which the lawsuit the lawsuit was filed:___Small Claims Court, 630 S.____
   College Street, Springfield, Illinois_____

F. Name of judge to whom case was assigned:___Judge Number 27_____

G. Basic claim made:___Money for my typewriter back_____

H. Disposition of the case:___Dismissed_____

I. Approximate date of disposition:___December 19, 2013_____

## IV. Statement of Claim:

Plaintiff, Robert Clark brings this civil action against certain medical providers employed by or under contract with the Illinois Department of Corrections ("IDOC"), specifically at Stateville Correctional Center where plaintiff is presently incarcerated. The defendants Randy Pfister, Former Warden; Charles Truitt, Current Warden; Marlene Kaye Henze, Medical Director; Doctor Buatista; Helen A. Bruckner, Nurse Practitioner; Orr, Nurse Practitioner; Lola, Nurse Practitioner; Tina, Registered Nurse; Lora, Registered Nurse; Wendy, Registered Nurse; John Does one thru five; Debbie Knauer, Administrative Review Board; Mark Chwajol, Neurologist at UIC; and Wexford Health Sources Inc., who has been deliberately indifferent to plaintiffs serious medical needs which caused plaintiff unnecessary and unreasonable pain and suffering for fourteen (14) years in violation of plaintiff's Eighth and Fourteenth Amendment protected right to be free from cruel and unusual punishment.

## Background

In 2005, plaintiff injured his back while lifting weights when he was a detainee at the Cook County Jail. Days later after plaintiff injured his back, he complained to medical providers that he had pain in his lower back and left hip, plaintiff put in a request to see a doctor who prescribed him Motrin.

On October 31, 2006, an x-ray was done on plaintiffs' hips which showed plaintiff had mild DJD (Degenerative Joint Disease) changes of the left hip.

On March 29, 2007, A Computer Tomography ("CT") was done on plaintiff's lower back which revealed plaintiff suffered from several herniated bulging disc located at L4/5 and L5/S1 that was compressed against plaintiff's nerve root causing sciatica and pain in his lower back, left leg and foot.

In 2008, plaintiff started physical therapy, and on March 24, 2008, plaintiff was referred to see a Neurologist by an Orthopedic M.D., and after plaintiff started feeling numbness in his private area and experiencing loss of bladder control and worsening of pain, his physical therapy was discontinued on July 7, 2008, until after plaintiff saw a Neurologist. During his entire incarceration at the Cook County Jail plaintiff was prescribed Motrin or naproxen which was ineffective.

On February 20, 2009, plaintiff was convicted and on June 18, 2009, he was sentence and sent to ("NRC") receiving at Stateville Correctional Center. On June 26, 2009, plaintiff was transferred to Menard Correctional Center where on August 12, 2009, he received an x-ray on his lower back ordered by Dr. Feinerman which revealed plaintiff had advanced degenerative disc space narrowing and degenerative disc changes at level L5/S1.

On October 4, 2011, two and eight months after his last x-ray, another x-ray was done on plaintiffs left hip and lower back this time ordered by Dr. Fuentes which revealed plaintiff had mild osteoarthritis of the left hip and suffered from a severe degenerative disc disease which had progressed at level L5/S1.

On October 1, 2013, two years after his previous x-ray, a third x-ray ordered by Dr. Shearing was taken on plaintiff's lower back which revealed plaintiff suffered from a severe degenerative disc disease located at level L4/5 and continued to progress at level L5/S1. There was severe disc space narrowing, endplate sclerosis, osteophyte formation and vacuum disc phenomenon.

During the time periods between each x-ray, plaintiff submitted numerous requests for medical attention in the form of written and verbal complaints to defendants Troust, MD; Dr. Fuentes; Dr. faham; Dr.Nwaobasi; Dr. Krieg, Dr. Feinerman; R. Pollion NP; K. Criss NP; Gail Walls RN; Charlotter Miget RN; and Ancheta RN; etc., all employees of Wexford Health Souces Inc., who chose to do nothing for six(6) years. There were never any medical follow-ups, plaintiff was denied any form of surgical intervention or to see a neurologist, the only form of medical treatment plaintiff received at Menard Correctional Center was Nappoxen and gabapentin's which plaintiff was sometimes denied or had to beg for despite his timely requests for renewal. Plaintiff followed Wexford sick call procedures and IDOC grievance procedure, he filed grievance after grievance to no end, only to be directed back to the same

system that had failed him. These defendants acted deliberately indifferent to plaintiff's serious medical needs.

Plaintiff was in the process of filing a civil complaint, but on July 18, 2015, plaintiff was transferred from Menard Correctional Center to Stateville Correctional Center, where he thought he would receive better medical treatment. Plaintiff was in extreme pain all that evening during intake and that night he was placed in F-house. The following morning plaintiff was given one (1) 250mg naproxen which he received each morning for approximately one week which did not help plaintiffs pain.

Plaintiff suffered continued back pain for approximately a month until he was seen by Dr. Martija on August 22, 2015, plaintiff tried to explain to her that he suffered from three herniated spinal disc that caused pain and numbness to radiate from his lower back down to his legs and feet, and that before he got to Stateville he was receiving 750mg Naproxen and 900mg Gabapentin and that he was there to get them refilled. Dr Martija became argumentative and told plaintiff that he was only allowed to have 500mg Naproxen once a day according to the FDA and that she was going to check the book, instead she came back with two officers and told them to escort plaintiff out. Plaintiff was prescribed 500mg Naproxen once a day which failed to alleviate plaintiffs back pain.

On June 24, 2016, approximately one (1) year after plaintiff entered Stateville he went to Saint Joseph Medical Center for an MRI on his lower back ordered by Dr. Saleh Obaisi, which revealed minimal disc bulge at L2-L3, and paracentral disc herniation at L3-L4 that is compressed against plaintiff's nerve root causing neural foraminal stenosis and spinal canal stenosis due to some epidural lipomatosis at L3. There is large disc bulges at L4-L5 and L5-S1 that is causing severe spinal canal stenosis at L4-L5 and L5-S1.

On October 13, 2016, plaintiff went back to Saint Joseph Medical Center for a evaluation on his chronic low back pain, Plaintiff discussed with Ikenna Okpareke, MD (Ike) the MRI findings and the risk and benefits of him receiving two (2) Lumbar Epidural Steriod Injections(LESI)and the prospect of having some form of surgical intervention. Okpareke started plaintiff back on his Gabapentin for the numbness in his legs and feet.

On November 30, 2016, plaintiff had his first Lumbar Epidural Steroid Injection (LESI) which was not helpful and his second (LESI) on December 16, 2016, in which plaintiff had 50 percent relief for approximately two and a half months. It was recommended that the Epidural Steroid Injections be administered to plaintiff every 3 to 4 months.

Approximately Eight (8) months after plaintiff received his injections at Saint Joseph medical Center, on August 2, 2017, plaintiff went to the University of Illinois Medical Center ("UIC") for a Epidural Steroid Injection which did not help plaintiffs pain. The physician who administered the injection at UIC recommended that plaintiff come back in two (2) weeks for a follow-up to see if the injection helped plaintiffs' pain which was denied by Dr. Obaisi and Dr. Ritz, the management physician for Wexford Health Sources Inc., so plaintiff was left in severe pain for 11 months until his next injection on February 20, 2018, at the University of Illinois Medical Center ("UIC"), which plaintiff had approximately 3 months relief. during this time period plaintiff filed several grievances #H559 and #2472.

In 2017, sadly Dr. Obaisi pasted away, during his time period as plaintiff's medical director, between July 18, 2015, to August 2, 2017, plaintiff was constantly in extreme pain because his back pain

medications had been reduced or discontinued, and if they ran out plaintiff had to beg to have them renewed despite his timely request for renewal. The Epidural Steroid Injections only helped sometimes depending on who administered the injections, and they were never administered as recommended 3 to 4 months. There were never any follow-ups unless plaintiff put in for sick-call and he submitted numerous request slips to the healthcare unit seeking medical attention or to see Dr. Obaisi which 65% to 75% of most healthcare passes to see Dr. Obaisi were cancelled. Plaintiff followed Wexford sick call procedures and he followed IDOC grievance procedures by filing numerous grievances during this time period all to no avail.

## Complaint

1. In 2018, Plaintiff met Defendant Dr. Henze who assured plaintiff during that first visit that she would get his injections on track by making sure he receives them every 3 to 4 months. Plaintiff received his next epidural steroid injection On October 18, 2018, administered by Dr. Natalie Wong, and Dr. Votta-Velis Eight (8) months after plaintiffs last injection which yield no relief. Before his injection plaintiff explained to Dr. wong that he was 'tired' of returning to UIC for back injections every so often and that he would like to be evaluated by neurosurgery for possible surgical intervention, so Dr. Wong referred plaintiff to the neurosurgery department. plaintiff filed several grievances #5477 and #6680.

2. After the injection plaintiff woke up the next day in extreme pain with numbness radiating throughout his back, testicles, buttocks, and both of his legs. Plaintiff told the nurse this when she came around that morning passing out meds and told her that he needed to see the defendant Dr. Henze, she told plaintiff that she would put him in to see the defendant. On October 24, 2018, plaintiff had an appointment to see the defendant Dr. Henze, after sitting in the healthcare unit until 2:30 pm, sergeant Taylor told us that defendant Dr. Henze was only seeing 4 more inmates and that anyone who had a appointment from 1:00pm down can leave and their appointments would be rescheduled, so plaintiff left there in extreme pain. The next day plaintiff filed a Grievance #6847.

3. On November 19, 2018, plaintiff went to ("UIC") where he was seen in the neurosurgery department by Dr.Konstantin Slavin. Plaintiff explained to Dr. Slavin that he had been experiencing low back pain since 2005 from lifting heavy weights and that he had multiple epidural steroid injections since 2016 which on occasions plaintiff would have some relief and on other occasions his pain had worsened depending on who performed the injections, after failing all medical management, including injections, oral medications, and physical therapy, plaintiff asked for a more definitive answer to his problem and that he would be interested in pursuing surgical intervention. Dr. Slavin reviewed plaintiffs previous MRI imaging from 2016 which revealed significant disk herniation at level L4-5 and L5-S1, so Dr. Slavin requested that plaintiff get    new "MRI" imaging to evaluate plaintiffs' current back problems prior to discussions of surgery.

4. On January 3, 2019, plaintiff had new "MRI" imaging done on his low back which revealed plaintiff suffered with disc hesitation and degenerative changes at level L1-L2, disc degeneration with loss of height and bulging herniated disc, compressed against plaintiffs nerve root at levels L2-L3, and L3-L4, central spinal stenosis and a degenerated posterior protruding disc, with degenerative changes at level L4-L5, and disc degeneration with loss of height and a protruding disc compressed against plaintiffs nerve root at level L5-S1.

5. On January 7, 2019, Plaintiff went back to "UIC" For a follow-up with Dr. Slavin to review plaintiffs new MRI imaging to determine whether or not plaintiff will need L4-L5 and L5-S1 disketomy.

The MRI imaging showed plaintiff have multilevel degenerative disease with most prominent stenosis at L4-L5 and L5-S1 level due to disk degeneration and bone spur formation on both sides. There is congenitally short pedicles on both levels, worse so at L4-L5, that contributes to plaintiffs spinal and foraminal stenosis.

6. After reviewing plaintiff's new "MRI" imaging, Dr. Slavin told plaintiff that he was a show candidate for surgery and that he would go call and fax a copy of his report to the medical director at Stateville Correctional Center so he can schedule plaintiff for surgery. When Dr. Slavin came back into the examining room from talking to Dr. Henze, his attitude towards plaintiff receiving surgery had changed, and he informed plaintiff that he recommend plaintiff to continue receiving epidural steroid injections since on occasions plaintiff had "some" relief and that he would ask defendant Dr. Henze to arrange for plaintiff to get injections 3 to 4 times a year. After reviewing plaintiff's MRI imaging which revealed plaintiff was a serious candidate for surgery, and Even after acknowledging that all medical management had failed, including epidural steroid injections, oral medications and physical therapy, plaintiff was denied surgery by defendants Dr. Slavin and Dr. Henze then he was directed back to the same medical treatment that only helped plaintiff cope with the pain or did not help him at all.

7. On or about January 9, 2019, plaintiff spoke with defendant Dr. Henze who once again assured plaintiff that she would make sure plaintiff receive his injections every 90 days but plaintiff suffered continued back pain for 11 months until his next injection on April 23, 2019, 6 months after his last injection which plaintiff had 50% relief for approximately 3 months.

8. on July 26, 2019, plaintiff received his next epidural steroid injection ('LESI') at UIC, the next day when plaintiff woke up he was in more pain then before he got the injection. plaintiff was feeling pain numbness, tingling and weakness in his thighs and in places he never felt pain before, plaintiff explained this to the nurse when she came around that morning passing out the meds and told her that he needed to see the defendant Dr. Henze. Upon leaving UIC plaintiff was given post-procedural discharge instructions which stated if plaintiff started having any new tingling, numbness, weakness or pain in his back, buttocks, legs or feet to notify his facility medical director or go to the emergency room immediately. Plaintiff did not speak with the defendant Dr. Henze until August 1, 2019, and she told plaintiff that she would immediately put him in to go back to UIC pain clinic.

9. When plaintiff left the healthcare unit speaking with Dr. Henze the next day when plaintiff woke up he could not move, he was in so much pain that he was crying real tears, the pain was so unbearable that on or about August 7, 2019, he had to have his cellmate sign him up for sick call and on or about August 8, 2019, plaintiff spoke with defendant Windy, RN, and he told her about how much pain he was in and that he needed to see Dr. Henze again to tell her that his condition had worsen. Windy told plaintiff that she would put him in to see the Defendant Dr. Henze.

10. Plaintiffs condition got worser so on August 12, 2019, plaintiff had his cellmate sign him up for sick call again and the next day defendant Windy came to plaintiffs cell where he explained to her that he needed to see Dr. Henze immediately because he was in so much pain and could barely move, defendant Windy told plaintiff that there was nothing she could do but she would put him in to see the medical director.

11. Again plaintiffs pain became so unbearable and the medications (naproxen) was not helping plaintiffs pain so he had his cellmate sign him up for sick call, and on or about August 17, 2019, defendant Windy came to plaintiffs cell where for the third time plaintiff detailed his condition to her

and told her that he needed to speak with the defendant Dr. Henze, defendant Windy told plaintiff in a manner like he was annoying her "look Mr. Clark there's nothing I can do for you, I told you that I will put you in to see Dr. Henze. Plaintiff filed a grievance #10844.

12. On or about August 19, 2019, plaintiff went to the healthcare unit where instead of seeing the defendant Dr. Henze, plaintiff spoke with the defendant Dr, Buatista. Plaintiff told him about how much pain he was in and that he could barely walk, defendant Dr. Buatista told plaintiff that he needed to see defendant Dr. Henze to be referred back to UIC and then speak with the treating physician there regarding any further treatment and that there was nothing he could do but put plaintiff in to see Dr. Henze. Dr. Buatista prescribed plaintiff some more pain medication and gave him a 30 day permit for a wheelchair until plaintiff saw the Defendant Dr. Henze. that same day without seeing plaintiff, defendant Henze wrote an order for plaintiff to receive 50mg of tramadol.

13. The defendants Dr. Henze, Dr. Buatista, and Windy RN disregarded the post-procedural instructions which specifically stated if plaintiff started having any new or increased pain, numbness, tingling or weakness to speak with his facility treating physician and go to the emergency room immediately, instead plaintiff was left in his cell in extreme pain ~~and that same day without seeing plaintiff, defendant Dr. Henze wrote an order for plaintiff to receive tramadol 50mg which did not help plaintiffs pain~~.

14. On November 7, 2019, plaintiff received his next epidural steroid injection (ESI) 4 months after his last injection which plaintiff had some relief for approximately 2 and a half months.

15. On December 20, 2019, plaintiff went to UIC for testing for a Lumbar Radiofrequency Ablation (RFA), a new procedural they wanted to try on plaintiff for the severe spinal canal stenosis (arthritis) that causes plaintiff to suffer in extreme pain across his lower back especially at night which causes plaintiff to loose sleep. On January 21, 2020, plaintiff had his first RFA which he had some relief across his lower back for approximately 5 months.

16. On February 20, 2020, Stateville Correctional Center went on lockdown for a few months due to the covid-19 pandemic, and during the year of 2020, defendant Dr. Henze was picking and choosing the inmates that she wanted to go to UIC, because most clinics were shutting down due to covid. Plaintiffs was in severe pain for eight months until his next epidural steroid injection on October 8, 2020, 11 months after his last injection which plaintiff had no relief in his buttocks, thighs, legs and feet.

17. Plaintiff received his next Lumbar Radiofrequency Ablation (RFA) on October 29, 2020, 9 months after his last RFA which plaintiff had some relief for approximately 6 months.

18. On January 18, 2021, defendants Tina, RN and Lora, RN and several other nurses (John Does One through Five) deliberately and systematically stopped plaintiffs pain medications (Tramadol and Neurontins) which helped the pain, numbness, and tingling in plaintiffs back that radiates down to his buttocks, legs and feet. Several weeks prior defendant Tina started having inmates to open their mouth, lift up their tongues, and pull their jaws open which plaintiff complied with. When inmates started complaining to her that she was targeting only those inmates who took tramadol and neurontins she started telling inmates that the defendants Warden Gomez and Dr Henze had her doing this because officers was finding neurontins in inmates cell during shakedowns which had nothing to do with plaintiff.

19. Inmates are required to put water in a 1oz paper cup which is provided by the nurses for them to put inmates meds in. When the defendant Tina got to plaintiffs cell and put his meds in the cup with the water, the neurontins always float to the top of the water and the tramadol would sink to the bottom of the cup and stick and all of the nurses passing out meds knew this. After plaintiff took his meds and swallowed the neurontins the defendant Tina told plaintiff to open his mouth and lift up his tongue and to pull his jaws open, at that point plaintiff and the defendant had a few words has he was taking the tramadols out of the cup, then he put them in his mouth.

20. Once again the defendant Tina asked plaintiff to open his mouth which plaintiff immediately did to show her that the tramadol was in his mouth and not in his hand then she just snapped stating "see he did not take it" she was talking to officer Hackett who was a witness to what occurred, this was before plaintiff got the chance to drink some water. After that plaintiff and the defendant Tina had a few more words then she left and plaintiff did not think anything more about it until that night when defendant Lora, RN came around without plaintiffs meds, when plaintiff asked her why she did not have his meds, she told plaintiff that someone (Tina) did not put his envelope that the nurses put his meds in back, so she was unable to give plaintiff his back pain medications.

21. Because of the defendant Tina, RN not putting plaintiffs medication envelope back the other nurses (John Does One through five) refused to give plaintiff his Tramadols and Neurontins causing plaintiff unnecessary pain and suffering for approximately 2 weeks until he saw Dr. Buatista on January 28, 2021 after numerous complains. Plaintiff was placed on crush and float meds which Defendant Tina could have done instead of systematically stopping plaintiffs back pain medications all-together leaving plaintiff to suffer in extreme plain for weeks. plaintiff filed a grievance #485.

22. on July 29, 2021, plaintiff received his next epidural steroid injection (LESI) 9 months after his last injection (LESI) which plaintiff had no relief, so plaintiff was left suffering with extreme pain, numbness, and tingling in his buttocks, that radiated down to his legs and feet for approximately 17 and a half months

23. On September 2, 2021, plaintiff received his next Lumbar Radiofrequency Ablation (RFA) 11 months after his last RFA which plaintiff had no relief, which left plaintiff in extreme pain across his lower back at that point for approximately 5 months

24. On October 14, 2021, plaintiff received another Epidural Steroid Injection (LESI) 2 and a half months after his last injection (LESI) which made plaintiffs pain worser to the point he could barely walk which left plaintiff confined in his cell for mouths.

25. Despite knowing that plaintiff's last Lumbar Radiofrequency Ablation (RFA) and his last "Three" Epidural Steroid Injections (ESI) did not help alleviate plaintiff's chronic back pain and that they made plaintiff's condition worser and left him suffering in extreme pain for approxiately 20 months. Instead of Defendant Henze requesting approval for plaintiff to be referred back to UIC to see Dr. Slavin, The neurosurgent for plaintiff to discuss with him some other form of treatment and/or surgical intervention for his back, the Defendant Dr.Henze requested for plaintiff to get another Epidural Steriod Injection which was approved by wexford Health Sources Inc.. Plaintiff was only suppose to receive two more Epidural Steriod Injections after his evaluation With Dr. Slavin back in 2018.

26. On February 3, 2022, plaintiff went to the University of Illinois Medical Center ("UIC") for a Lumbar Radiofrequency Ablation but when plaintiff got there defendant Dr. Chovatiya told plaintiff

that there was a new procedure that he wanted to try, plaintiff told him that he would prefer to get the RFA because when its done right it last 5 to 6 months. Dr. Chovatiya told plaintiff that he think the new procedure would help the pain in his back and legs Which plaintiff later found out was just a Epidural Steriod Injection (performed by Chovatiya and Dr. Mounihan) placed in another spot. Upon leaving UIC, James Gillespie MD recommendations was "please" follow-up with pain clinic in one month time, and "please" give plaintiff a medical mattress which was for plaintiff's hips, and was denied by defendant Dr. Henze.

27. When plaintiff got back to Stateville Correctional Center, 2 days later plaintiff woke up in extreme pain and literally could not stand up or walk, when the nurse came around that morning passing out meds plaintiff informed her that he was in extreme pain and could not walk and that he needed to see Dr. Henze immediately, her only response was that she would put plaintiff in for sick-call, and he was left in the cell in extreme pain.

28. On February 18, 2022, plaintiff went to the health care unit where he spoke with Defendant Lola, NP about the pain he was in and that he needed to see defendant Dr. Henze. On March 17, 2022, plaintiffs pass to see defendant Dr. Henze was cancelled, on March 31, 2022 plaintiffs pass to see defendant Dr. Buatista was cancelled, and on April 11, 2022, plaintiffs pass to see defendant Dr. Buatista was cancelled after sitting in the health care unit in extreme pain from 9:30 am to 2:30 pm. Finally, on April 25, 2022, plaintiff saw defendant Dr. Buatista about the extreme pain he was in and told him that he needed to see another neurosurgeon, defendant Dr. Buatista saw that plaintiff could barely walk so he gave plaintiff a permit for a crutch and assured plaintiff that he would put him in to see Dr. Slavin the first neurosurgeon plaintiff saw.

29. Approximately three and half months after plaintiff complained about experiencing this pain in his thighs, on May 17, 2022, plaintiff was taken to the University of Illinois medical Center for an MRI. On May 26, 2022, plaintiff went back to ("UIC") where he discussed the results of his MRI with Dr.votta-velis. The MRI revealed that plaintiff condition had worsen and that he suffered with diffuse disc bulges at levels L5-S1, L4-5, L3-4, L2-3, and several herniated disk, a degenerative disk disease at multi levels of plaintiff's lumbar spine which has progressed at levels L5-S1 and L2-3.

30. On June 8, 2022 plaintiff when back to ("UIC") to see the neurosurgeon, instead of seeing Dr. Slavin, plaintiff spoke with another neurosurgeon who plaintiff later found out his name was defendant Mark Chwajol, MD. After plaintiff and his two assigned correctional officers entered the examining room, several minutes later defendant Dr. Chwajol walked into the room sat down in a chair leaned backed and crossed his arms and legs then asked plaintiff why are you here and what can I do for you?

31. Plaintiff started explaining to defendant Dr. Chwajol that on February 3, 2022, he went to ("UIC") where he got a Epidual Steriod Injection then two days later plaintiff woke up and could not stand-up or walk, at that point defendant Dr. Chwajol rudely interrupted plaintiff by saying, " I do not want to hear anything that happened four months ago, why are you here and what can i do for you?

32. Again, Plaintiff tried to explain to Defendant Dr.Chwajol that he came to ("UIC") 0n May 17, 2022 where he had a MRI done on his lower back which revealed that plaintiffs condition had worsen, once again Dr. Chwajol rudely interrupted plaintiff by saying I do not want to hear anything that happened a month ago, why are you here and what can i do for you?

33. At that point plaintiff and the two officers, one being correctional officer D. Morales #4830 looked at each other in disbelief, plaintiff then turned back to defendant Dr. Chwajol and asked "don't you have my MRI images and files in your computer like the last neurosurgeon i spoke with, aren't you supposed to be telling me what's the matter with me, not me telling you what's the fucks the matter with me". After plaintiff said that defendant Dr. Chwajol got up and walked out of the room, several minutes later a nurse stuck her head into the room and said to the two correctional officers that defendant Dr. Chwajol said "that the visit is over and you can take him back". Again plaintiff and the two officers looked at each other in disbelief and upon leaving, C/O D.Morales #4830 specifically stated that he never saw a doctor who did not let you explain what's the matter with you.

34. When plaintiff got back to Stateville Correctional Center he spoke with defendant Dr. Buatista who asked plaintiff what happen at UIC, plaintiff explained the aforememtioned facts to him, then defendant Buatista told plaintiff that defendant Dr. Chwajol did not want to see him again and that he did not know why plaintiff saw defendant Dr. Chwajol that day, because plaintiff was supposed to see Dr. Slavin and he assured plaintiff that he would refer him to see Dr. Slavin, and that he would speak to Defendant Dr. Henze.

35. On or about July 20, 2022, Plaintiff put in for sick call and several days later plaintiff spoke with a nurse (David) about the server pain he was in and told him that he needed to see Defendant Henze. The nurse assured plaintiff that he would refer him to see Defendant Dr. Henze. After approximately three weeks had elapsed plaintiff put back in for sick call and on or about August 8, 2022, plaintiff spoke with a    nurse (David) about his pain and told him that he had a pass to see Defendant Lola, the nurse practitioner, that same day, the nurse told plaintiff that he would still refer him to see the Defendant Dr. Henze.

36. When plaintiff got to the health care unit he spoke with Defendant Lola, plaintiff explained to her that he was in extreme pain because he had not had his injection in a while and that when he saw the neurologist at UIC, he was disrespectful and asked her to investigate by asking the two officers that escorted plaintiff to UIC. Plaintiff told defendant Lola he needed to see the Defendant Dr. Henze to be referred to another Medical Center, or to see another neurosurgeon at UIC to discuss other treatments for plaintiff's back or some form of surgical intervention. Defendant Lola told plaintiff that doctors had rights to, meaning (Dr. Chwajol) and she assured plaintiff that she would put him in to see Defendant Henze.

37. Afte seven weeks had elapsed, plaintiff put in for sickcall and on or about September 2, 2022, Plaintiff spoke with a nurse about the extreme pain he was in and about being referred to see another neurologist at UIC, or refer plaintiff to another Medical Center for treatment, he told plaintiff that he would refer him to see the Defendant Dr. Henze to discuss further treatment. Finally, on September 8, 2022, plaintiff went to UIC for a Radiofrequency Ablation ((RFA) as the nurse was taking plaintiff's blood pressure she asked plaintiff why he was not in the nuerosurgeons department, plaintiff explained to her that it was because Dr. Chwajol said he was disrespectful towards him but it was Dr. Chwajol who was disrespectful towards plaintiff. The nurse informed plaintiff that Dr. Chwajol was no longer working at UIC and that she would speak with the nuerosurgeons department. plaintiff's blood pressure was 210/170, after taking plaintiff's blood pressure three times, the doctor informed plaintiff that his blood pressure was to high for the (RFA) and recommended that plaintiff come back in a week.

38. On or about September 19, 2022, plaintiff put in for sick call because he did not go back to UIC in a week for his RFA, but the next day plaintiff had a appointment to see Defendant Bruckner,

plaintiff told her about the extreme pain he was in and asked her about why he did not go back to UIC in a week for his (RFA), and informed her about he needed to see another neurosurgeon to discuss what can be done to try to alleviate some of the pain in his back. Defendant Bruckner sat there with her elbows on her desk, face in her hands like plaintiff was irritating her while plaintiff was explaining to her what happen on June 8, 2022, when plaintiff spoke with the neurosurgeon, Defendant (Chwajol). Defendant Bruckner went to plaintiff's file then told plaintiff that Defendant Chwajol did not want to see him again and that there will be no more scheduling to see a neurosurgeon or to go to UIC, and there was no need for her to refer him to see Defendant Henze.

39. Plaintiff tried to explain to her that he had just went to UIC on September 8, 2022, and he was told that Dr. Chwajol no longer worked there. Defendant Bruckner then became disrespectful and loud telling plaintiff that she did not care about that, then she stated mocking the way plaintiff move his hands and the way he talked, saying, "do you ever think about its the way you deliver your message, how do you like that", because she got loud the officer appeared in the doorway, Plaintiff was confused by her actions, then plaintiff told Defendant Bruckner that he could not help that she did not like the way he moved his hands or the way he talk, and that he had not gotten loud with her, cussed at her, or been disrespectful toward her in anyway. Defendant Bruckner told plaintiff again that he will not be seen in the neurosurgeon department at UIC because they did not want to see him. Plaintiff told Defendant Bruckner that UIC is not the only hospital and If they did not want to see him at UIC, then she could refer plaintiff to another Medical Center, or refer him to see Defendant Henze. The officer asked plaintiff to leave so he left there in extreme pain. On November 10, 2022, plaintiff filed a grievance #1495.

40. On November 19, 2022, Plaintiff spoke with Defendant Bruckner again regarding the extreme pain he was experiencing in his kidneys, back, and his hips which plaintiff has (DJD) in and has been trying to get treatment for since he's been in Stateville Correctional Center. Defendant Bruckner told plaintiff that the pain he was experencing in his kidneys was because of his back problems, plaintiff was given a urine test and was presrcibed Zithroman 250gm for his kidneys (which plaintiff was never told what was the matter with his kidneys), and she ordered an x-ray for plaintiff's hips. On December 27, 2022, plaintiff's pass to see Defendant Henze was cancelled.

41. On January 6, 2023, an x-ray was taken of plaintf's pelvis by Felix, the Technololigt, plaintiff asked him was he going to take an x-ray of his hips, felix told plaintiff that that was the x-ray of his hips. When plaintiff took previous x-rays of his hips, they were taken one hip at a time. When plaintiff requested a copy of his x-ray report it was not in his file, so plaintiff submitted another request and several days later plaintiff received a one page x-ray report stating that Defendant Helen A. Bruckner alledgedly reveiwed plaintiff's x-ray and his left and right hip was found negative for DJD which plaintiff has two previous x-ray reports that shows otherwise. Plaintiff has been experiencing severe pain in his hips, and has gone without any treatment since his incarceration in IDOC.

42. On or about January 15, 2023, plaintiff put in for sick-call to see the Defendant Dr. Henze for chest pains and because approxiately ten of plaintiff's previous healthcare passes to see her was cancelled, the nurse the nurse told plaintiff that she would look into his next appointment and assured plaintiiff that she would put him in to see the medical director. on or about january 20, 2023, plaintiff put back in for sick-call because he was in extreme pain and needed to see a neurosurgeon, again the nurse assured plaintiff that she would put him in to see Defendant Henze. On January 27, 2023 plaintiff's appointment tosee Defendant henze was cancelled.

43. On or about March 13, 2023, plaintiff spoke with the Denfendant Bruckner about going out to see another nuerosurgeon because he was in severe pain and could not walk, plaintiff also told her that several of his passes to see Dr. Henze had been cancelled and could she put him in to see her. Defendant Bruckner told plaintiff that the nuero-clinic did not want to see him and that she had no control over the cancelled passes but she would put plainiff in to see Defendant Henze.

44. On or about May 22, 2023, plaintiff spoke with the Defendant Orr, NP about the follow-up visit he had at UIC, on May 11, 2023. during that conversation plaintiff asked her if she would refer him to another medical center to see a neurosurgeon there since they did not want to see him at UIC, Defendant Orr then stud over plaintiff and told him there will be no more shceduling to the neurosurgeons department at UIC and that its either injections or nothing and that she will shcedule plaintiff for a appoinment to see Defendant Henze to discuss other neurosugery option. it was at this point plaintiff decided to file this complaint. plaintiff was left in extreme pain in his lower back, and numbness in his buttocks, thighs, legs and feet for 33 months until his next injection on November 3, 2023, which plaintiff had some relief but still had on going pain.

45. Plaintiff felt that explaining in detail from the beginning of when he first got his injury was the only way he could explain the inadequate medical treatment he has been experencing for fourteen years. All the defendants in this complaint did nothing to assist plaintiff to obtain any other form of treatment or form of surgery, or to improve the consistency and timeliness of plaintiff's referrals to UIC for his epidural steriod injections and/or his radiofrequency ablations to alleviate plaintiff's constant chonic back pain because of his degenerative joint disease (Hips and Femur), degenerative disk disease and severe stenosis that has resulted in pain radiating throughout plaintiff's back, buttocks, thighs, hips, femur, legs and feet.

46. Plaintiff has filed and appealed dozens and dozens of grievances over the last 13 years concerning the issues in this complaint, to no avail. Plaintiff has exhaused all administrative remedies reasonably availible to him prior and during bringing this claim, and the defendants prior warden Pfister; current warden Truitt; Grievance officers; healthcare medical Staff; and Debbie Knauer from the administrative review board have rejected, denied, dismissed, failed to timely respond to and/or failed to properly address plaintiff's grievances.

47. At all times relevant to this complaint, wexford, by and through its employees, was aware of and continue to be aware of plaintiff's disability and needs for some form of surgical intervention and/or some other form of treatment at least becuase of the numerous grievances filed by plaintiff and reviewed by Wexford's employees. Wexford/IDOC was and is acting pursuant to a policy, custom, and practices of treating inmates/plaintiff's medical needs with deliberate indifference in an efford to cut costhas voilated plaintiff's constitutional rights.

**This action is brought against the defendants in their individual and official capacities**

48. Defendant Charles Truitt, the current warden of Stateville Correctional Center, This action is brought against defendant Truitt in his individual and official capacities because he was the recipient of numerous grievances filed by the plaintiff Robert Clark. Defendant Truitt knew or should have known of plaintiff not receiving adequate medical treatment and of plaintiff's quality of life diminishing because plaintiff had been confined to his cell for months and/or years at a time suffering in extreme pain. Plaintiff could not sleep, shower, use the facilities, and could not walk. Plaintiff's numerous grievances which Defendant Warden Truitt reviewed, concurred with, and signed provide him

notice of these circumstances, that should have been sufficient to cause him to take some form of action or at the very least alert or consult with plaintiff's doctors to see if plaintiff was receiving adequate medical treatment. Defendant Charles Truitt, as Warden of Stateville Correctional Center acted deliberately indifferent to plaintiff's serious medical need which violated plaintiff's Eighth and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

49. Defendant Randy Pfister, the prior Warden of Statevlle Correctional Center, This action is brought against defendant Pfister in his individual and official capacities because he was the recipient of numerous grievances filed by plaintiff Robert Clark. Defendant Pfister knew or should have known of plaintiff not receiving adequate medical treatment and of plaintiff's quality of life diminishing because plaintiff had been confined to his cell for months and/or years at a time, suffering in extreme pain. Plaintiff could not sleep, shower, used the facilities, and could not walk. Plaintiff's numerous grievances which Defendant Pfister reviewed, concurred with and signed provide him notice of these circumstances, that should have been sufficient to cause him to take some form of action or at the very least alert or consult with plaintiff's doctors to see if plaintiff was receiving adequate medical treatment. Defendant Randy Pfister prior Warden of Stateville Correctional Center acted Deliberately indifferent to plaintiff's serious medical needs which violated plaintiff's Eighth and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

50. Defendant Marlene Henze is employed by IDOC and/or Wexford Health Sources Inc., This action is brought against defendant Henze in her individual and official capacities. As the medical director of Stateville Correctional Center, defendant Henze is responsible for providing medical directions to and supervision of medical physicians, performing medical diagnosis and treatment, evaluating and reviewing the work of nurse practitioners and register nurses for appropriate diagnosis and ensuring adequate medical treatment and chart documentation. Defendant Henze knew and/or should have known of the deficiencies, denials, and delays of plaintiff's follow-ups visits to UIC, His delays in receiving his Epidural Steroid Injections, and Lumbar Radiofrequency Ablation, and of plaintiff being denied surgery for Wexford's desire to cut costs. Defendant Henze was aware of plaintiff's serious medical needs because she reviewed plaintiff's medical records, and was involved in the assessments of plaintiff's medical needs for year. Defendant Henze had numerous discussions with plaintiff about his pain and his desire for some form of other treatment or surgical intervention, which also provided her with knowledge of plaintiff's medical needs which should have prompted her to further inquire as to some other form of treatment or plaintiff's need for surgery. Instead Defendant Henze deliberately cancelled approxiately 20 passes for plaintiff to see her. Defendant Marlene Henze as medical director of Stateville Correctional Center acted deliberately indifferent to plaintiff's serious medical needs which violated plaintiff's Eighth and fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

51. Defendant Dr. Buatista is employed by IDOC and/or Wexford Health Sources Inc., this action is brought against defendant Buatista in his individual and official capacities. As a Medical Physician at Stateville Correctional Center, Defendant Dr. Buatista is responsible for providing medical diagnosis and ensuring adequate medical treatment, he knew and/or should have known that plaintiff has been suffering from neurological difficulties for fourteen years which causes pain, numbness, and tingling    to radiate from plaintiff's buttocks, thighs, legs, and feet causing plaintiff to suddenly and without warning to lose all sensation in his lower body and still Defendant Buatista refused to refer and/or recommend plaintiff for surgery even after numerous discussions with plaintiff about his servere pain and his repeated desire for some form of surgical intervention. Defendant Buatista as a Doctor at Stateville Correctional Center acted deliberately indifferent to plaintiff's serious medical needs which

violated plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

52. Defendant Helen A. Bruckner is employed by IDOC and/or Wexford Health Sources Inc., as a Nurse Practitioner. This action is brought against Defendant Helen A. Bruckner in her individual and official capacities. As a Nurse Practitioner at Stateville Correctional Center, Defendant Helen A. Bruckner is responsible for providing diagnosis and ensuring adequate medical treatment, she knew and/or should have known that plaintiff has been suffering from neurological difficulties for fourteen years which causes pain, numbness, and tingling to radiate from plaintiff's thighs, buttock down to his thighs, legs, and feet causing plaintiff to suddenly and without warning to lose all sensation in his lower body and still Defendant Bruckner on occasions refused to refer and/or recommend plaintiff to see Defendant Henze or a neurosurgeon after numerous discussions with plaintiff about the severe pain he was in and his repeated desire for some form of other treatment or surgical intervention, insead she mocked plaintiff. Plaintiff begged Defendant Bruckner/them to investigate Dr. Chwajol's claims against him by asking the two officers who escorted plaintiff to UIC, to no avail. Defendant Helen A Brucker as a Nurse Practitioner at Stateville Correctional Center acted deliberately indifferent to plaintiff's serious medical needs which violated plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

53. Defendant Orr is employed by IDOC and/or Wexford Health Sources Inc., as a Nurse Practitioner. This action is brought against defendant orr in her individual and official capacities. As a Nurse Practitioner at Stateville Correctional Center Defendant Orr is responsible for providing diagnosis and ensuring adequate medical treatment to plaintiff, she knew and/or should have known that plaintiff has been suffering in extreme pain form neurological difficulties for fourteen years which causes pain, numbness, and tingling to radiate from plaintiff's buttocks down to his thighs, legs, and feet causing plaintiff to suddenly and without warning to lose all sensation in his lower body, and still Defendant Orr on occasions    refused to refer and/or recommend plaintiff to see Defendant Henze or a neurosurgeon after numerous discussions with plaintiff about the server pain he was in and his repeated desire for some form of surgical intervention, instead, she stud over plaintiff and told him that there was no need to refer him to see Defendant Henze or refer plaintiff to see a neorosurgeon    because they did not want to see him, and it was injections or nothing. Plaintiff begged Defendant Orr/them to investigate Dr. Chwajol's claims    against plaintiff by asking the two officers who escorted plaintiff to UIC, to no avail. as a Nurse practitioner at Stateville Correctional Center acted deliberately indifferent to plaintiff's serious medical needs which violated plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

54. Defendant Lola is employed by IDOC and/or Wexford Health Sources Inc., as a Nurse Practitioner. This action is brought against defendant Lola in her individual and official capacities. As a nurse Practitioner at Stateville Correctional Center is responsible for proving diagnosis and adequate medical treatment plaintiff, she knew and/or should have known that plaintiff has been suffering in extreme pain fron neurological difficulties for fourteen years which causes pain, numbness, and tingling to radiate from plaintiff's buttocks down to his thighs, legs, and feet causing plaintiff to lose all sensation in his lower body. After several discussions with plaintiff about the severe pain he was in and plaintiff's repeated desired for some form of surgical intervention, Defendant Lola told plaintiff on those occasions that she was not referring him to see Defendant Henze or a neurosurgeon because Doctors had rights to, (meaning Dr. Chwajol). Plaintiff begged Defendant Lola to investigate Dr. Chwajol's claims against plaintiff by asking the two officers who escorted plaintiff to UIC, to no avail. Defendant Lola as a Nurse Practitioner at Stateville Correctional Center acted deliberately indifferent to Plaintiff's serious medical

needs which violated Plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

55. Defendant Dr. Mark Chwajol is and/or was employed by the University of Illinois Medical Center (UIC) as a Neurologist, this action is brought against defendant Mark Chwajol in his individual and official capacities. Defendant Mark Chwajol was responsible for reviewing and going over plaintiff's MRI report and medical file to determine whether or not plaintiff needed some form of surgical intervention or another form of treatment, instead he came into the room set back in a chair crossing his arms and legs and the only thing he said to plaintiff on three occasions was, why are you here, and what can I do for you. when plaintiff tried to explain to him why he was there, defendant Dr. Chwajol became disrespectful and rudely interrupting plaintiff on several occasions stating that he did not want to here anything that happen before plaintiff's visit on June 8, 2022, and after plaintiff responded to Defendant Dr. Chwajol's rudeness he got up and walked out of the room which was unprofessional and he wrote in his report that it was plaintiff that was disrespectful to him and that he did not want to see plaintiff again leaving plaintiff suffering in extreme plain for two years and counting. Defendant Dr. Mark Chwajol as a employee at the University of Illinois Medical Center (UIC), acted deliberately indifferent to Plaintiff's serious medical needs which violated Plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

56. Defendant, Tina was employed by IDOC and/or Wexford Health Sources Inc., as a Registered Nurse. This action is brought against defendant Tina in her individual and official capacities. Defendant Tina was responsible for passing out the medication in D-House, and she deliberately and systematically stopped plaintiff's back pain medications for two weeks without any authorization from a Medical Director and/or Treating Physician, she knew and/or should have known that when she did not put plaintiff's medication envelope back that plaintiff would not receive his back pain medications and would be left suffering in extreme pain because she had been passing out meds to plaintiff for years and was aware of plaintiff's condition. Defendant Tina as a Registered Nurse at Stateville Correctional Center, acted deliberately indifferent to Plaintiff's serious medical needs when she deliberately did not put Plaintiff's medication envelope back so plaintiff will not receive his back pain medication leaving Plaintiff to suffer in extreme pain for two weeks, which violated Plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

57. Defendant, Lora was employed by IDOC and/or Wexford Health Source Inc., as a Registered Nurse at Stateville Correctional Center. This action is brought against defendant Lora in her individual and official capacities. Defendant Lora deliberately and systematically helped Defendant Tina stop plaintiff's back pain medications for two weeks without any authorization from a medical Director and/or Treating Physician, she knew and/or should have known that if plaintiff did not receive his back pain medications that plaintiff would be left suffering in extreme pain because she knew of plaintiff's condition and saw that plaintiff could barely move, stand-up or walk when she was passing out meds, Defendant Lora as a Registered Nurse acted deliberately indifferent to Plaintiff's serious medical needs when she left Plaintiff suffering in extreme pain for weeks which violated Plaintiff's Eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

58..Defendants, John Does One through Five, past and present was employed by IDOC and/or Wexford Health Sources Inc., as Registered Nurses at Stateville Correctional Center. This action is brought against defendants John Does One Through Five in their Individual and official capacities. Defendants John Does One Through Five Deliberately and systematically helped defendant Tina stop plaintiff's back pain medications for two weeks, Defendants John Does one thru five knew and/or should

have known that if plaintiff did not receive his back pain medications that plaintiff would be left suffering in extreme pain because they knew of plaintiff's condition and saw that plaintiff could barely move, stand-up or walk when they was passing out meds, Defendants John Does one thru five as Registered Nurses acted deliberately indifferent to plaintiff's serious medical needs when they left plaintiff suffering in extreme pain for two weeks which violated plaintiff's eight and fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

59. Defendant Wendy was employed by IDOC and/or Wexford Health Sources Inc., as a Registered Nurse. This action is brought against defendant Wendy in her individual and official capacities. As a nurse at Stateville Correctional Center, Defendant Wendy is respnsible for passing out meds, responding to plaintiff's sickcall request, and interviewing him for his serious chronic back problems and referring plaintiff to see a provider when needed but she deliberately refused to refer plaintiff to see the Defendant Dr. Henze when she knew and/or should have known that Defendant Henze was the only one who could refer plaintiff to go to UIC for emergency treatment, instead she acted like plaintiff was irritating her. Defendant wendy as a Registered Nurse at Stateville Correctional Center, acted deliberately indifferent to Plaintiff's serious medical needs which violated Plaintiff's Eight and Fourteenth Amendment Protected right to be free from cruel and unusual punishment.

60. Defendant Debbie Knauer, is a member of the administrative review board, This action is brought against her in her individual and official capacities because she deliberately denied approxiately 50 to 60 of plaintiff's grievances in retiliation of plaintiff filing a greivance against Billie Greer, a member of the administrative review broad, and complaining about the way they answered them. Defendant Debbie Knauer acted deliberately indifferent to plaintiff's serious medical needs when she deliberately denied plaintiff's greivances which violated plaintiff's eight and Fourteenth Amendment Protected Right to be free from cruel and unusual punishment.

## V.     Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no case or statutes.

A.)     Compensatory damages in the amount of Fifty Thousand ($50,000) Dollars, per each Defendant;

B.)     Punitive damages in the amount of Five Hundred Thousand (500,000) Dollars, per each Defendant, or as the court seems fit;

C.)     Damages for physical and mental suffering in the amount of One Hundred Thousand (100,000) Dollars, per each Defendant;

D.)     Injunction Relief for Defendant Henze to send plaintiff Robert Clark to another Medical Center for some from of surgical intervention, And/or to be transferred to another facility for treatment.

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this

Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct I may be subject to sanctions by the Court.

Signed this _____5_____ day of _SEPTEMBER_, 20_24_

_Robert Clark_
(Signature of plaintiff or plaintiffs)

ROBERT CLARK
(Print name)

N23186
(I.D. Number)

STATEVILLE CORRECTIONAL CENTER

P. O. BOX 112

JOLIET, ILLINOIS,

60434
(Address)

IN THE

NORTHEN DISTRICT

OF ILLINOIS EASTERN DIVISION

ROBERT CLARK                                    )

**Plaintiff**                                   )

    v.                          )          Case No. NEW CASE

CHARLES TRUITT                                  )

**Defendant**

## PROOF/CERTIFICATE OF SERVICE

TO: PRISONER CORRESPONDENT          TO: _____

UNITED STATES DISTRICT COURT        _____

219 S. DEARBORN STREET              _____

20th FLOOR, CHICAGO, IL 60604       _____


TO: _____             TO: _____

_____                 _____

_____                 _____

_____                 _____

**PLEASE TAKE NOTICE** that on SEPTEMBERS , 20 24 , I have placed the documents listed below in the institutional mail at STATEVILLE Correctional Center, properly addressed to the parties listed above for mailing though the United States Postal Service: E-FILING

Pursuant to 28 USC 1746, 18 USC 1621 or 73Silcs 5/1-109, I declare, under the penalty of perjury, that I am a named party in the above action, that I have read the above documents, and that the information contained therein is true and correct to the best of my knowledge.

DATE: 9/5/2024

/s/ Robert Clark

NAME ROBERT CLARK

IDOC# N23184

SCANNED AT STATEVILLE CC and E-mailed
9-6-24 by JS ___ pages
date        initials    No.